**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Linda L'Esperance

    v.                                Civil No. 11-cv-555-LM
                                         Opinion 2012 DNH 104
HSBC Consumer Lending, Inc.;
HSBC Finance Corporation;
HSBC Group a/k/a HSBC Bank, NA
a/k/a HSBC North American Holdings,
Inc.; Household International,
Inc.; Beneficial Corporation;
Beneficial New Hampshire, Inc.;
and Manhattan Mortgage Corporation


**O R D E R**


In her amended complaint, Linda L'Esperance asserts

thirteen claims against seven defendants.  Those claims all

arise out of the origination and servicing of a pair of loans.

Before the court are two motions to dismiss: (1) document no.

24, filed by HSBC Group; and (2) document no. 25, filed by all

the defendants other than HSBC Group and Manhattan Mortgage

Corporation ("Manhattan Mortgage").  Notwithstanding the

pendency of two motions to dismiss, L'Esperance has filed a

pleading titled "Plaintiff's Objection to Defendants' Motion to

Dismiss," document no. 27, that is supported by a memorandum of

law that addresses document no. 25 but does not address document

no. 24.  For the reasons that follow, HSBC Group's motion to

dismiss is granted in part and the second motion to dismiss is granted in full, with prejudice.

## The Legal Standard

A motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). To pass that test, the complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims." Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), a trial court "accept[s] as true all well-pled facts in the complaint and draw[s] all reasonable inferences in favor of plaintiff[ ]." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010)). But, "naked assertions devoid of further factual enhancement need not be accepted." Plumbers' Union, 632 F.3d at 771 (quoting Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir.

2009)).  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  United Auto. Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 41 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  United Auto. Workers, 633 F.3d at 40 (citation omitted).  On the other hand, a Rule 12(b)(6) motion should be granted if "the facts, evaluated in [a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist."  Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (citations omitted).  That is, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  Plumbers' Union, 632 F.3d at 771 (citation omitted).

## Background

Much of the relevant background has been set out in the court's previous order in this case, document no. 11, and is not repeated here in detail.  L'Esperance's claims arise out of her

dissatisfaction with the origination and servicing of: (1) a
$385,699.40 loan to refinance the mortgage on her home; and (2)
a personal credit-line account with a credit limit of $11,500.
Both loans were extended by "Beneficial New Hampshire Inc."
Defs.' Mot. to Dismiss, Ex. A (doc. no. 25-2), at 3; Ex. B.
(doc. no. 25-3), at 2).  To secure the refinancing loan,
L'Esperance granted a mortgage on her home to "Beneficial New
Hampshire Inc."  Id., Ex. C (doc. no. 25-4), at 2.  The personal
credit-line account, which L'Esperance alleges was extended to
her as a source of funds to cover her closing costs, is not
secured by a mortgage.  The court will introduce additional
factual allegations from L'Esperance's amended complaint as they
are relevant to the disposition of specific claims for relief.

## Discussion

### A. HSBC Group's Motion to Dismiss

In document no. 24, HSBC Group moves to dismiss on grounds
that L'Esperance has failed to allege sufficient facts to
demonstrate that it is an entity capable of being sued.  In the
alternative, it joins in document no. 25.  L'Esperance has not
responded to HSBC Group's motion to dismiss or any of the
arguments advanced therein.  While L'Esperance's silence in
response to document no. 24 could be taken as a concession that
HSBC Group is entitled to dismissal of all the claims against

it, the court will, nonetheless, address the merits of the
arguments raised in document no. 24.

HSBC Group relies on Rule 17(b) of the Federal Rules of
Civil Procedure ("Federal Rules"), which provides, in pertinent
part:

> **Capacity to Sue or Be Sued.**  Capacity to sue or be
> sued is determined as follows:
>
> **(1)** for an individual who is not acting in a
> representative capacity, by the law of the
> individual's domicile;
>
> **(2)** for a corporation, by the law under which it was
> organized; and
>
> **(3)** for all other parties, by the law of the state
> where the court is located, except that:
>
> > **(A)** a partnership or other unincorporated
> > association with no such capacity under that
> > state's law may sue or be sued in its common
> > name to enforce a substantive right existing
> > under the United States Constitution or laws
> > . . .

Fed. R. Civ. P. 17(b).  Plainly, HSBC Group is not an
individual, and, as it correctly points out, L'Esperance has not
adequately alleged that it is a corporation.  Thus, in HSBC
Group's view, its capacity to be sued is governed by the law of
New Hampshire, under which "[a] voluntary association, except as
provided for by statute . . . has no legal existence apart from
the members who compose it," Brooks v. Trs. of Dartmouth Coll.,
161 N.H. 685, 691 (2011) (quoting Shortlidge v. Gutoski, 125

N.H. 510, 513 (1984)) (emphasis added by <u>Brooks</u>).  The problem

with HSBC Group's argument is that it seems not to account for

Rule 17(b)(3)(A), which allows suits against unincorporated

associations to enforce rights existing under federal law.

Because many of L'Esperance's claims are based on federal

statutes, HSBC Group's motion to dismiss is granted, but only in

part.  HSBC Group is entitled to dismissal of the state-law

claims asserted in Counts III,[1] VI, VII, IX, X, XI,[2] and XIII.

### B. The Second Motion to Dismiss

In document no. 25, HSBC Consumer Lending, Inc.; HSBC

Finance Corporation; Beneficial New Hampshire ("Beneficial NH");

Beneficial Corporation; and Household International, Inc. move

to dismiss.  As noted, HSBC Group joins in this motion to

dismiss.  The moving defendants first argue that L'Esperance has

again impermissibly relied on group pleading, and then they

identify specific deficiencies in each of her claims.

Based on L'Esperance's failure to specifically identify any

---

[1] While Count III appears to be based primarily on the
federal Equal Credit Opportunity Act, it also includes a stray
reference to the New Hampshire Fair Housing Act.  <u>See</u> Am. Compl.
¶ 66.

[2] While Counts VI ("Breach of Obligation of Good Faith"),
VII ("Unconscionable Conduct"), and XI ("Willful and Oppressive
Conduct") do not identify in any meaningful way the law under
which they purportedly arise, the court presumes that
L'Esperance intended to assert the claims described in those
counts under the common law of New Hampshire.

conduct by any defendant other than Beneficial NH, all the moving defendants other than Beneficial NH are entitled to dismissal of the claims against them.  Beneficial NH, in turn, is entitled to dismissal of all the claims asserted against it because none of them can withstand the scrutiny demanded by Rule 12(b)(6).

### 1. Group Pleading

In her amended complaint, L'Esperance describes various interactions with Jennifer Halteman and/or Cathy Maranhao at an office located at 75 Congress Street, Portsmouth, New Hampshire, that resulted in the two loans at issue here.  The loan agreements for both loans identify the lender as:

> Beneficial New Hampshire
> 75 Congress Street
> Portsmouth, NH 03801

Defs.' Mot. to Dismiss, Ex. A (doc. no. 25-2), at 3; Ex. B (doc. no. 25-3), at 2.  With regard to the relationships among Beneficial NH and the other moving defendants, L'Esperance alleges:

> In connection with the two loans at issue in this litigation, that closed on October 23, 2008, the Plaintiff presented at the Portsmouth location of Household International, Inc. to refinance the existing mortgage on her Seabrook, New Hampshire home.
>
> While at the time the location of the branch office was identified as Household International, Inc., the nature of the loan originator was

represented on documentation provided to Plaintiff as
being HSBC/Beneficial.

These documents were provided to the Plaintiff by
Jennifer Halteman, Assistant Vice President and Branch
Sales Manager of "Beneficial, Member HSBC Group,"
and/or Cathy Maranhao, both of HSBC Group and
Beneficial branch office location 75 Congress Street,
Portsmouth, New Hampshire.  Plaintiff was additionally
provided with cards for these persons associated with
her loan identifying them to be employees of
"Beneficial, Member HSBC Group."  These individuals
and other individuals at this branch office were
agents of Defendants HSBC Lending, HSBC Finance
Corporation, HSBC Group, Household International Inc.
and Beneficial Corp.  Though Beneficial NH, Inc. now
appears to Plaintiff to have been a separately
incorporated entity and identified on the mortgage and
some loan documentation, on information and belief,
Beneficial NH, Inc. was a "branch office," and agent
and wholly owned subsidiary of Defendants HSBC
Lending, HSBC Finance Corporation, HSBC Group,
Household International Inc. and Beneficial Corp.
Thus, the Plaintiff alleges that Defendants HSBC
Lending, HSBC Finance Corporation, HSBC Group,
Household International Inc. and Beneficial Corp. are
responsible for the representations and actions of Ms.
Halteman and Ms. Maranhao, are responsible for the
acceptance and origination of the Plaintiff's loans,
and are additionally independently responsible for the
violations and causes of action set forth herein as
the servicers of the Plaintiff's loans, at least from
March 2009 forward.

Am. Compl. (doc. no. 20) ¶¶ 24-26.

Based on the allegations described above, most of

L'Esperance's claims are framed in the following way:

The Defendants Beneficial NH, Inc., Household
International, Inc., HSBC Consumer Lending, Inc., HSBC
Finance Corporation, HSBC Group a/k/a HSBC Bank, NA
a/k/a HSBC North American Holdings, Inc. and Beneficial
Corporation have violated and continue to violate the
requirements of TILA and Regulation Z . . .

Am. Compl. ¶ 47.  Despite replacing the word "defendant" with a
list of six specific entities, L'Esperance has not solved the
group-pleading problem the court identified in its order
granting HSBC Consumer Lending's motion to dismiss.  To
paraphrase the Court of Appeals for the First Circuit, "each
defendant's role in the [loan process] must be sufficiently
alleged to make [it] a plausible defendant."  Ocasio-Hernández
v. Fortuño-Burset, 640 F.3d 1, 16 (1st Cir. 2011).  L'Esperance
does not allege specific conduct by specific defendants, but,
rather, appears to base its claims on the idea that what one
defendant did, all defendants did.  That is not enough.

Two defendants can be liable for the same conduct if they
did something jointly.  If A and B intentionally hit C with a
stick they are both wielding, then C may have a cause of action
against A and B for battery.  But here, the agreements
documenting the loans at issue identify one lender and one
lender only: Beneficial NH.  The business cards and other
ancillary paperwork L'Esperance mentions in her complaint are
insufficient to transform any entity other than Beneficial NH
into her lender, and there is no factual support in the
complaint for L'Esperance's assertion that her loan was
originated, by six different entities, "jointly and through
their affiliations with each other," Am. Compl. ¶ 8.

There is, of course, the possibility of vicarious liability
for Beneficial NH's conduct, which L'Esperance appears to
attempt to invoke with her allegations concerning Beneficial
NH's status as a "a 'branch office,' and agent and wholly owned
subsidiary of Defendants HSBC Lending, HSBC Finance Corporation,
HSBC Group, Household International Inc. and Beneficial Corp."
Am. Compl. ¶ 26 (emphasis added).  While the statuses of "branch
office," "agent," and "wholly owned subsidiary" are not
necessarily mutually exclusive, L'Esperance's imprecision,
coupled with her suggestion that Beneficial NH filled each of
those three roles, simultaneously, with respect to five separate
"home offices," "principals," and "corporate parents," does
little to resolve the group-pleading problem or establish a
proper basis for imposing vicarious liability.  Beyond that, the
idea that Beneficial NH was acting as a "branch office" or as an
"agent" would seem to be contradicted by the fact that
L'Esperance's two loans were made by Beneficial NH, in its own
corporate name, rather than in the name of some "home office" or
"principal."  Finally, leaving aside the rather fanciful
corporate mechanics of Beneficial NH being "wholly owned" by
five other entities, its status as a wholly owned subsidiary, if
proven, would do nothing in terms of vicarious liability.  As
Judge Duffy explained in an order partially granting a motion to

dismiss in a putative class action against a mortgage lender,

the lender's parent corporation, and that corporation's parent:

> Golden West and Wachovia cannot be held liable
> for World's actions simply because Golden West is
> World's parent, and Wachovia is Golden West's parent.
> See United States v. Bestfoods, 524 U.S. 51, 61 (1998)
> ("It is a general principle of corporate law deeply
> ingrained in our economic and legal systems that a
> parent corporation . . . is not liable for the acts of
> its subsidiaries."); Broussard v. Meineke Discount
> Muffler Shops, Inc., 155 F.3d 331, 349 (4th Cir. 1998)
> (stating, in applying North Carolina law, "A corporate
> parent cannot be held liable for the acts of its
> subsidiary unless the corporate structure is a sham
> and the subsidiary is nothing but a mere
> instrumentality of the parent." (internal quotation
> marks omitted)); Carroll v. Smith-Henry, Inc., 313
> S.E.2d 649, 651 (S.C. Ct. App. 1984) ("Stock ownership
> alone ordinarily does not render a parent corporation
> liable for the contracts of its subsidiary
> irrespective of whether the subsidiary is wholly owned
> or only partially owned . . . .").

Mincey v. World Sav. Bank, FSB, 614 F. Supp. 2d 610, 622

(D.S.C. 2008) (parallel citations omitted); see also Leeman

v. Boylan, 134 N.H. 230, 235-36 (1991) (acknowledging

parent corporation's potential liability based on

independent duties but discounting application of vicarious

liability to parent corporation based solely on its

ownership of subsidiary).

In sum, based on L'Esperance's failure to cure the group-

pleading problem identified in the court's previous order, HSBC

Consumer Lending, Inc.; HSBC Finance Corporation; HSBC Group;

Household International, Inc.; and Beneficial Corporation are

each entitled to dismissal of all the claims against them.

Because the claim asserted in Count V under the Home Affordable Modification Program ("HAMP") does not list Beneficial NH as a defendant, that claim is dismissed in its entirety.  With regard to the defendants actually named in Count V, L'Esperance's claim says:

> Defendants Household International, Inc., HSBC Consumer Lending, Inc., HSBC Finance Corporation, HSBC Group a/k/a HSBC Bank and Beneficial Corporation, each individually or jointly with one or more of the other[s], interfaced with the Plaintiff regarding her loan modification, general loan servicing, and application under their financial hardship program as servicers.

Am. Compl. ¶ 84.  It is difficult to imagine a more objectionable example of group pleading.  See Ocasio-Hernández, 640 F.3d at 16.

But, in any event, it is well established that there is no private right of action under HAMP.  See, e.g., Miller v. Chase Home Fin., LLC, ___ F.3d ___, ___, 2012 WL 1345834, at *1-2 (11th Cir. Apr. 19, 2012); Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 559 n.4 (7th Cir. 2012) ("[S]ome homeowners [have] tried to assert rights arising under HAMP itself.  Courts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against servicers.") (citations omitted).  In its memorandum of law, Beneficial NH cites approximately a dozen cases that stand for

the proposition that HAMP does not create a private right of action.  In an argument unencumbered by any citations of authority, L'Esperance states that she "disagrees with Defendants' argument that the 'courts have repeatedly ruled that no private right of action exists under HAMP.'"  Pl.'s Mem. of Law (doc. no. 27-1), at 5.  Her argument is not persuasive

In addition, Counts VIII (asserting a claim against "[t]he Defendants" under the federal Fair and Accurate Credit Transactions Act),[3] and XI (asserting a claim against "all defendants" for "willful and oppressive conduct"),[4] are both dismissed for failure to sufficiently allege each defendant's role in the allegedly unlawful acts.  See Ocasio-Hernández, 640

---

[3] For what it is worth, L'Esperance did not bother to respond to Beneficial NH's arguments in favor of dismissing Count VIII.  Had that count adequately identified a defendant, it does not "contain enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the claims [asserted therein]."  Fantini, 557 F.3d at 26 (citation and internal quotation marks omitted).  Moreover, it does not even rise to the level of offering labels and conclusions or formulaically reciting the elements of a cause of action.  See United Auto. Workers, 633 F.3d at 41.  Dismissal of Count VIII, then, is doubly warranted.

[4] The court explained in its previous order that "[w]illful and oppressive conduct is not a cause of action."  Order (doc. no. 11), at 21.  The law has not changed.  Yet, Count VII of L'Esperance's original complaint has been revived as Count XI of her amended complaint, notwithstanding her acknowledgement that "willful and oppressive conduct will not be recited as a separate count," Pl.'s Mem. of Law (doc. no. 27-1), at 3.  The court is perplexed.  Even without the group-pleading problem, Count XI would be dismissed for the same reason the court dismissed the same claim just over four months ago.

F.3d at 16.  Given that L'Esperance has already had two bites at
this apple, the foregoing dismissals are with prejudice.
Consequently, all that remains of this case are L'Esperance's
claims against Beneficial NH (asserted in Counts I-IV, VI, VII,
IX, X, and XIII) and Manhattan Mortgage (asserted in Counts IX,
X, XII, and XIII).

### 1. Counts I & II: TILA & HOEPA

In Count I, L'Esperance asserts three claims, purportedly
under the Truth in Lending Act ("TILA") and a portion of the
Code of Federal Regulations that implements TILA, i.e.,
Regulation Z.  Specifically, she asserts:

(1) a claim based on: (a) 15 U.S.C. § 1639(h), which, with
    regard to certain mortgage loans, bars creditors from
    "engag[ing] in a pattern or practice of extending
    credit to consumers . . . based on the consumers'
    collateral without regard to the consumers' repayment
    ability"; and (b) 12 C.F.R. § 226.32(e)(1), a section
    that does not appear to exist in the Code of Federal
    Regulations, see Am. Compl. ¶ 47;

(2) a claim based on 15 U.S.C. § 1639(c) and 12 C.F.R. §
    226.32(d)(6), which, with regard to certain mortgage
    loans, generally bar prepayment penalties,[5] see Am.
    Compl. ¶ 48; and

---

[5] The agreement covering L'Esperance's refinancing loan
states, in two different places: "You may prepay your loan in
full or in part at any time without penalty."  Defs.' Mot. to
Dismiss, Ex. A (doc. no. 25-2), at 4, 6.  The agreement covering
the personal credit-line account does not provide for fixed
monthly payments, so the concept of prepayment would not seem to
apply to that loan.  Thus, the factual basis for the claim
asserted in paragraph 48 is not readily apparent.

(3)   a claim based on 15 U.S.C. § 1639(d) and 12 C.F.R. §
      226.32(d)(4), which, with regard to certain mortgage
      loans, generally bar the imposition of a higher
      interest rate after a default than the rate that
      applied before default,[6] see Am. Compl. ¶ 49.

L'Esperance characterizes Count I as asserting claims under TILA

and characterizes Count II as asserting claims under the Home

Ownership and Equity Protection Act ("HOEPA").[7]  Yet, the claims

asserted in Counts I and II are substantially overlapping, and

all arise out of various provisions of either 15 U.S.C. § 1639

or Regulation Z.  That said, in Count II, L'Esperance asserts:

(1)   a claim based on 15 U.S.C. § 1639(h) and 12 C.F.R. §
      226.32(e)(1), the same authorities cited in the claim
      asserted in paragraph 47, see Am. Compl. ¶ 51(1);

---

[6] As 15 U.S.C. § 1639(d) and 12 C.F.R. § 226.32(d)(4)
prohibit the imposition of a higher interest rate after a
borrower defaults, the court is puzzled by L'Esperance's
citation of those provisions as authority for the claim she
asserts in paragraph 49, i.e., that the defendants violated "the
requirements of HOEPA and Regulation Z by including a prohibited
prepayment provision."  Moreover, L'Esperance makes no
allegations concerning any increase in her interest rate, which
would seem to further undermine the claim asserted in paragraph
49.

[7] Judge Karlton has helpfully explained the relationship
between TILA and HOEPA: "Section 1639 [of Title 15] codifies the
Home Ownership and Equity Protection Act ('HOEPA'), which
amended TILA in 1994 to 'combat predatory lending.'"  Yulaeva v.
Greenpoint Mortg. Funding, Inc., No. CIV. S-09-1504 LKK/KJM,
2010 WL 5394859, at *3 (E.D. Cal. Dec. 21, 2010) (quoting Henry
v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg.
Co.), 471 F.3d 977, 984 n.1 (9th Cir. 2006)).  Based on the
foregoing, it would appear that all of the so-called TILA claims
in Count I, which are based on § 1639, are actually HOEPA
claims.

(2)    a claim based on 15 U.S.C. § 1639(c) and 12 C.F.R. §
       226.32(d)(6), the same authorities cited in the claim
       asserted in paragraph 48, <u>see</u> Am. Compl. ¶ 57(2);

(3)    a claim based on 12 C.F.R. § 226.32(d)(4), one of the
       two authorities cited in the claim asserted in
       paragraph 49,[8] <u>see</u> Am. Compl. ¶ 57(3);

(4)    a claim based on: (a) 12 C.F.R. § 226.32(a)(1)(ii),
       which does not proscribe any conduct but, rather,
       specifies the loans to which § 226.32 applies; and/or
       (b) 12 C.F.R. §§ 226.32(b)(1)(i)-(iii), which are
       parts of the regulatory definition of "points and
       fees,"[9] <u>see</u> Am. Compl. ¶ 57(4);

(5)    a claim, citing no specific legal authority, that
       Beneficial NH "wrongfully document[ed] a closed-end,
       high-cost loan as an open-ended loan,"[10] <u>see</u> Am. Compl.
       ¶ 57(5); and

---

[8] This claim is as puzzling as the one asserted in paragraph
49.  While 12 C.F.R. § 226.32(d)(4) prohibits "[a]n increase in
the interest rate after default," the conduct on which the claim
asserted in paragraph 57(3) is based is Beneficial NH's
origination of a loan with an interest rate more than ten
percent above the yield on certain Treasury securities.
L'Esperance is flatly incorrect if she believes that HOEPA bars
loans with such interest rates.  <u>See</u> 15 U.S.C. 1602(aa)(5)
(2006) ("This subsection shall not be construed to limit the
rate of interest or the finance charge that a person may charge
a consumer for any extension of credit.")  HOEPA merely requires
that when a lender makes a loan with such an interest rate, it
must provide certain disclosures, <u>see</u> 12 C.F.R. § 226.32(c), and
avoid certain terms, <u>see</u> § 226.32(d).

[9] Like the claim asserted in paragraph 57(3), this claim
appears to be based on an erroneous belief that HOEPA prohibits
so-called "high-cost" mortgages, rather than regulating them.

[10] This claim asserts that Beneficial NH's conduct violated
HOEPA, but cites no particular provision of HOEPA under which
the alleged conduct is unlawful.  Absent a citation to specific
legal authority, paragraph 57(5) fails to state a claim on which
relief can be granted.

(6)   a claim based on 15 U.S.C. § 1639(a); 12 C.F.R. §§ 226.31(c)(1), (2)-(4);[11] and 66 Fed. Reg. 65,618, which generally pertain to disclosures that must be made by mortgage lenders, see Am. Compl. ¶ 57(6).

After eliminating L'Esperance's references to C.F.R. provisions that either do not exist or do not regulate conduct, Counts I and II appear to assert claims based on: 15 U.S.C. §§ 1639(a), (c), (d), and (h); 12 C.F.R. §§ 226.31(c)(1)-(2); and 12 C.F.R. §§ 226.32(d)(4) and (6).  For the various statutory and regulatory violations she asserts, L'Esperance seeks monetary damages, rescission of her loan, and other equitable relief.

Beneficial NH argues that Counts I and II should be dismissed because: (1) L'Esperance's claim for monetary damages is time-barred; (2) her claims based on the imposition of a prepayment penalty fail as a matter of law because her loan agreement expressly allowed prepayment without penalty; and (3) her claim for rescission fails because she has not adequately alleged that either of the loans at issue was a "high-cost" loan that entitled her to the protection of HOEPA.  L'Esperance disagrees, but ineffectively.

---

[11] 12 C.F.R. § 226.31(c)(1) regulates the timing of disclosures for certain closed-end home mortgages, while § 226.31(c)(2) regulates the timing of disclosures for certain reverse mortgages.  L'Esperance does not appear to allege that hers was a reverse mortgage, which calls into question her citation of § 226.31(c)(2).  Moreover, Title 12 of the Code of Federal Regulations does not appear to contain either a § 226.31(c)(3) or a § 226.31(c)(4).

Beneficial NH's first two arguments, neither of which L'Esperance challenges, are both correct.  Beneficial NH's third argument, however, is both correct and fully dispositive of the claims asserted in Counts I and II.  Accordingly, the court's consideration of Counts I and II begins and ends with its ruling that L'Esperance has failed, in the first instance, to allege facts sufficient to support a determination that either of the loans at issue in this case is subject to the protections of HOEPA.

All four of the statutory provisions on which L'Esperance bases the claims she asserts in Counts I and II expressly pertain to "certain mortgages," *i.e.*, those "referred to in section 1602(aa) of this title."  When L'Esperance received the loans at issue in this case, Section 1602(aa) of Title 15 provided in pertinent part:

> A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling . . . if—
>
> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
>
> (B) the total points and fees payable by the consumer at or before closing will exceed the greater of—

> (i) 8 percent of the total loan amount; or
>
> (ii) $400.

15 U.S.C. § 1602(aa)(1) (2006).  All of the regulations on which

L'Esperance bases her claims in Counts I and II are subject to

the following coverage provision:

> [T]he requirements of this section apply to a consumer
> credit transaction that is secured by the consumer's
> principal dwelling, and in which either:
>
> (i) The annual percentage rate at consummation
> will exceed by more than 8 percentage points for
> first-lien loans, or by more than 10 percentage points
> for subordinate-lien loans, the yield on Treasury
> securities having comparable periods of maturity to
> the loan maturity as of the fifteenth day of the month
> immediately preceding the month in which the
> application for the extension of credit is received by
> the creditor; or
>
> (ii) The total points and fees payable by the
> consumer at or before loan closing will exceed the
> greater of 8 percent of the total loan amount, or
> $400; the $400 figure shall be adjusted annually on
> January 1 by the annual percentage change in the
> Consumer Price Index that was reported on the
> preceding June 1.

12 C.F.R. § 226.32(a)(1).

Regarding the pleading standards applicable to

L'Esperance's claims, "[n]umerous . . . district courts have

held that a complaint must at least allege facts suggesting that

the loan [at issue] falls into one of [the] categories"

described by 15 U.S.C. § 1602(aa)(1).  Yulaeva v. Greenpoint

Mort. Funding, Inc., No. CIV. S-09-1504 LKK/KJM, 2010 WL

5394859, at *4 (E.D. Cal. Dec. 21, 2010) (citing Biggins v. Wells Fargo & Co., 266 F.R.D. 399, 411 (N.D. Cal. 2009); Palmer v. GMAC Commercial Mortg., 628 F. Supp. 2d 186, 190 (D.D.C. 2009); Lynch v. RKS Mortg., Inc., 588 F. Supp. 2d 1254, 1260 (E.D. Cal. 2008)); see also Esoimeme v. Wells Fargo Bank, No. CIV S-10-2259 JAM EFB PS, 2011 WL 3875881, at *5 (E.D. Cal. Sept. 1, 2011).  Bearing in mind the relevant pleading requirements, the court turns to L'Esperance's complaint.

As a preliminary matter, L'Esperance does not allege that the personal credit line extended by Beneficial NH was secured by her principal dwelling, and the agreement itself includes no suggestion that it was.  Thus, that loan is not covered by HOEPA or the regulations on which L'Esperance relies.  See 15 U.S.C. § 1602(aa)(1); 12 C.F.R. § 226.32(c)(1).  Moreover, HOEPA's definition of covered mortgages expressly excludes "transaction[s] under an open end credit plan," 15 U.S.C. § 1602(aa)(1), a category that includes L'Esperance's personal credit-line account.[12]  Accordingly, in Counts I and II,

---

[12] In Nelson v. JPMorgan Chase Bank, N.A., Judge Mauskopf, "[f]or argument's sake . . . regard[ed] [a] Home Equity Line as a closed-end transaction," 707 F. Supp. 2d 309, 314 (E.D.N.Y. 2009), but the home-equity line in that case, unlike the personal credit line in this case, was secured by the borrower's dwelling," see id. at 313.  Moreover, unlike this case, where L'Esperance alleges only that the credit line was used to pay closing costs, the borrower in Nelson paid for a $500,000 home with the proceeds of a $400,000 mortgage loan and a $100,000

L'Esperance has failed to state a claim based on the personal credit-line account because that loan is not a mortgage entitled to the protection of HOEPA or 12 C.F.R. §§ 226.31 and 226.32.

L'Esperance has also failed to adequately allege facts that would place her refinancing loan under the umbrella of protection offered by HOEPA or 12 C.F.R. §§ 226.31 and 226.32. In her amended complaint, she states: "The refinancing loan was a high cost loan."  Am. Compl. ¶ 35.  But that is just a "naked assertion[ ]," Plumbers' Union, 632 F.3d at 771, or a legal conclusion, see United Auto. Workers, 633 F.3d at 41, that carries no weight as a factual allegation.

With regard to the first category of protected "high-cost" loans, i.e., those with high annual percentage rates, L'Esperance refers, in paragraph 57(3) of her complaint, to the interest-rate triggers stated in 15 U.S.C. §1602(aa)(1)(A) and 12 C.F.R. § 226.32(a)(1)(i), and appears to allege, in a highly conclusory fashion, that her interest rate exceeded the relevant trigger point.  In her memorandum of law, she refers to allegations in her complaint concerning the interest rate on her refinancing loan, the amount of her monthly payment, the total repayment amount, the amount of her closing costs, and the

home-equity line of credit.  See id. at 313 n.6.  Given those differences, there is no good reason for this court to regard L'Esperance's personal credit-line account as a closed-end transaction subject to HOEPA.

interest rate applicable to her personal credit-line account.
But, she has made no allegations concerning the yield on
Treasury securities with comparable periods of maturity on the
fifteenth day of the month before Beneficial NH received her
loan application.  Thus, she has not alleged facts sufficient to
suggest that the interest rate on her loan reached the trigger
point that would have required Beneficial NH to comply with
HOEPA.  See Esoimeme, 2011 WL 3875881, at *5 (dismissing HOEPA
claim where complaint failed to "allege any facts showing that
plaintiff's loan [met] the specific thresholds necessary for
HOEPA to apply"); Kaliner v. Mort. Elec. Reg'n Sys., Inc. (In re
Reagoso), Bankr. No. 06-12961, Adversary No. 07-0047, 2007 WL
1655376, at *4 (Bankr. E.D. Pa. June 6, 2007) ("Defendants next
correctly assert that the cause of action under HOEPA in Count I
must be dismissed because the Plaintiff fails to allege that the
loan the Reagosos obtained to refinance their home was one which
meets the specific requirements outlined by the Federal Home
Ownership and Equity Protection Act.").

L'Esperance's allegations are also insufficient with regard
to the second category of "high-cost" loans, i.e., those with
excessive points and fees, see 15 U.S.C. § 1602(aa)(1)(B) and 12
C.F.R. § 226.32(a)(1)(ii).  In paragraphs 57(2) and (4) of her
complaint, L'Esperance mentions the points-and-fees ceiling, and

again, in a highly conclusory fashion, appears to allege that
the points and fees she paid qualify her loan for HOEPA
protection.  But, she nowhere alleges either directly or with
any precision, just how much she paid in points and fees.  Thus,
she has not alleged facts sufficient to suggest that the points
and fees on her loan exceeded the ceiling that would have
required Beneficial NH to comply with HOEPA.  See Lynch, 588 F.
Supp. 2d at 1260 ("Plaintiffs' Complaint, however, does not
allege any particular facts showing that the [points-and-fees]
percentage threshold for HOEPA protection was actually crossed
in this case.  That failure alone subjects the claim to
dismissal.") (citing Marks v. Chicoine, No. C 06-06806 SI, 2007
WL 160992, at *8 (N.D. Cal. Jan. 18, 2007); Justice v.
Countrywide Home Loans, Inc., No. 3:05-CV-008, 2006 WL 141746,
at *2 (E.D. Tenn. Jan. 18, 2006)); see also Biggins, 266 F.R.D.
at 411 (finding plaintiffs' allegation that they "were required
to pay excessive fees, expenses, and costs which exceeded more
than 10% of the amount financed" insufficient to demonstrate
that their loan was covered by HOEPA).

Moreover, based on L'Esperance's factual allegations and
the facts available in her loan agreement, it seems clear that
her points and fees came nowhere close to reaching the
applicable ceiling.  In allegations related to her personal

credit-line account, L'Esperance seems to suggest that her
closing costs were approximately $11,500.  In her loan
agreement, prepaid finance charges were listed as $12,686.
Those two figures, added together, come to just over $24,000.
But on a loan of $385,699.40, see Defs.'s Mot. to Dismiss, Ex. A
(doc. no. 25-2), at 5, Beneficial NH was entitled to charge
$30,855.95 in points and fees before L'Esperance's loan became a
"high-cost" loan under the provisions of 15 U.S.C. §
1602(aa)(1)(B) and 12 C.F.R. § 226.32(a)(1)(ii).  In short, as
with the interest-rate trigger, L'Esperance has failed to
adequately allege that her loan included points and fees
sufficiently high to bring her loan within the protection of
HOEPA.  See Lynch, 588 F. Supp. 2d at 1260 (determining that
plaintiffs' points and fees did not meet HOEPA threshold, based
on calculations performed on figures derived from loan
settlement statement); Palmer, 628 F. Supp. 2d at 190 (same); In
re Reagoso, 2007 WL 1655376, at *4 (same).

    In her memorandum of law, L'Esperance concludes her
discussion of her HOEPA claims in the following way:

> The Plaintiff drafted her amendment in a
> conscientious and diligent effort to comply with the
> pleading requirements set forth by this Court.  The
> Plaintiff feels she has alleged facts evidencing the
> high cost nature of this loan, and that she falls into
> the 3 year statutory period to claim rescission.  If
> the Court should require additional facts, in the

> interest of justice, the Plaintiff seeks leave to so
> amend.

Pl.'s Mem. of Law (doc. no. 27-1), at 5.  L'Esperance, of
course, cannot move for leave to amend her complaint in an
objection to a motion to dismiss.  <u>See</u> LR 7.1(a)(1) ("Objections
to pending motions and affirmative motions for relief shall not
be combined in one filing.").  That said, the interests of
justice cut both ways.  Justice demands that plaintiffs have a
fair opportunity to state legitimate claims against those they
think have wronged them, but justice also requires some degree
of protection for defendants from plaintiffs who are unable to
do so.

In both her original complaint and her amended complaint,
L'Esperance asserted HOEPA claims based on her belief that
Beneficial NH extended her a high-cost loan.  The criteria that
qualify a loan as "high cost" for purposes of HOEPA are plainly
spelled out in both the statute and its implementing
regulations.  Indeed, the amended complaint expressly mentions
both the interest-rate trigger and the points-and-fees ceiling.
In its order granting HSBC Consumer Lending's motion to dismiss,
without prejudice, the court provided L'Esperance with a rather
detailed tutorial on how to satisfy the federal pleading
standards.  Given L'Esperance's demonstrated knowledge of the
specific criteria that qualify a loan as a "high-cost" loan

under HOEPA, and the knowledge of federal pleading standards the court presumes she gleaned from its previous order, her failure to make sufficient allegations in her amended complaint merits dismissal with prejudice.

### 2. Count III: ECOA & FHA

In Count III, L'Esperance claims that Beneficial NH discriminated against her because of her gender in violation of 15 U.S.C. § 1691(a)(1).[13]  Beneficial NH moves to dismiss Count III on grounds that L'Esperance's ECOA claim is time-barred. L'Esperance has not responded to Beneficial NH's argument on this point, apparently conceding its validity.  Claims under ECOA generally must be brought no "later than two years from the date of the occurrence of the violation."  15 U.S.C. § 1691e(f). Because L'Esperance has alleged no ECOA violation that occurred less than two years before she filed suit, and has alleged no facts that would entitle her to the benefit of the statutory exceptions to the two-year limitation period, see §§ 1691e(f)(1)-(2), her ECOA claim is time barred.  Accordingly, Beneficial NH is entitled to dismissal of Count III.

---

[13] That statute is a part of the Equal Credit Opportunity Act ("ECOA").  L'Esperance also attempts to assert a claim under the federal and state Fair Housing Acts in Count III, but provides no statutory citations.  Accordingly, Count III is limited to a claim under ECOA.

### 3. Count IV: RESPA

In Count IV, L'Esperance asserts that Beneficial NH violated 12 U.S.C. §§ 2605 and 2607, two provisions of the Real Estate Settlement Procedures Act ("RESPA").  Beneficial NH moves to dismiss, arguing L'Esperance's complaint fails to state a claim under § 2607 and that her claim under § 2607 is time barred.  L'Esperance does not respond to Beneficial NH's meritorious argument on the § 2607 claim, apparently conceding that the claim is indeed time barred.  That leaves her claim under § 2605.

With respect to 12 U.S.C. § 2605, L'Esperance asserts the following claim:

> The Defendants violated Section 6 . . . of RESPA [i.e., 12 U.S.C. § 2605]. . . .
>
> . . . Defendants Beneficial New Hampshire, Inc., Household International, Inc., HSBC Consumer Lending, Inc., HSBC Finance Corporation, HSBC Group a/k/a HSBC Bank and Beneficial Corporation, on information and belief . . . failed to provide sufficient, adequate, and timely disclosures and notices under RESPA, and therefore committed [a] further violation  [of that statute].
>
> The Plaintiff seeks monetary damages, actual and treble damages, and attorneys fees and costs for the originating Defendants' violations of RESPA.

Am. Compl. §§ 74-76.  The only other mention of RESPA appears in the following paragraph from the General Allegations section of L'Esperance's complaint:

Further, the Defendants Household International,
Inc., HSBC Consumer Lending, Inc., HSBC Finance
Corporation, HSBC Group a/k/a HSBC Bank, NA a/k/a HSBC
North American Holdings, Inc. and Beneficial
Corporation, on information and belief, also failed to
provide sufficient, adequate, and timely disclosures
and notices under TILA, HOEPA, ECOA, FACTA, and RESPA.

Am. Compl. § 43.[14]

The statute on which L'Esperance relies for her cause of

action in Count IV provides, in pertinent part:

Each person who makes a federally related
mortgage loan shall disclose to each person who
applies for the loan, at the time of application for
the loan, whether the servicing of the loan may be
assigned, sold, or transferred to any other person at
any time while the loan is outstanding.

Each servicer of any federally related mortgage
loan shall notify the borrower in writing of any
assignment, sale, or transfer of the servicing of the
loan to any other person.

. . . .

Each transferee servicer to whom the servicing of
any federally related mortgage loan is assigned, sold,
or transferred shall notify the borrower of any such
assignment, sale, or transfer.

12 U.S.C. §§ 2605(a), (b)(1) and (c)(1).  Regarding civil

liability under the foregoing statutory provisions,

"[w]hoever fails to comply" with § 2605(c), or any
provision of § 2605, is liable to the borrower for
"any actual damages to the borrower as a result of the
failure" and "any additional damages, as the court may
allow, in the case of a pattern or practice of
noncompliance with the requirements of this section,

---

[14] L'Esperance does not explain why Beneficial NH is
mentioned in paragraph 75 but is not mentioned in paragraph 43.

in an amount not to exceed $1,000."  § 2605(f)(1)(A)-
(B).

Amaral v. Wachovia Mortg. Corp., 692 F. Supp. 2d 1226, 1231,

(E.D. Cal. 2010).  "Absent factual allegations suggesting that

[a RESPA] Plaintiff[ ] suffered actual damages, [a] RESPA claim

is insufficiently pled and subject to dismissal."  Id. (citing

Molina v. Wash. Mut. Bank, No. 09-CV-00894-IEG (AJB), 2010 WL

431439, at *7 (S.D. Cal. Jan. 29, 2010); Lemieux v. Litton Loan

Servicing, LP, No. 2:09-cv-02816-JAM-EFB, 2009 WL 5206641, at *3

(E.D. Cal. Dec. 22, 2009); Garcia v. Wachovia Mortgage Corp.,

676 F. Supp. 2d 895, 909 (C.D. Cal. 2009)).

     In its motion to dismiss, Beneficial NH points out that

L'Esperance's only factual allegations concerning RESPA

liability and actual damages are that it collected fees in

association with her loan.  That is insufficient, as a matter of

law, to state a claim based on § 2605.  L'Esperance offers the

following counterargument:

          The Defendants maintain that the Plaintiff must
     allege that she was harmed by the change in servicer
     without notice to her.  Here, the Plaintiff has so
     alleged, and has specifically alleged harm in the
     withdrawal of servicing by the Defendants despite
     promises intended to induce her into entering the loan
     transaction that the loan interest would be adjusted
     downwards.

Pl.'s Mem. of Law (doc. no. 27-1), at 5.  L'Esperance's argument

does not identify factual allegations in the complaint

sufficient to state a claim under 12 U.S.C. § 2605.  Moreover, the court has been unable to locate any allegations concerning a change in servicer(s) of L'Esperance's loan or any damages she may have suffered as a result of a lack of notice.  Accordingly, Beneficial NH is entitled to dismissal of Count IV.

### 4. Count VII: Unconscionable Conduct

Count VII is a claim for "unconscionable conduct." Unconscionable conduct is not a cause of action.  Count VII is dismissed.

### 5. Count IX: Misrepresentation

Count IX is a claim for negligent, fraudulent, or intentional misrepresentation.  Beneficial NH moves to dismiss Count IX, arguing that L'Esperance has failed to adequately allege scienter.  L'Esperance disagrees.

In its previous order, the court explained that "to the extent that any of the claims in Count IV [i.e., L'Esperance's misrepresentation claim] require a showing of scienter, L'Esperance's allegation that '[t]he Defendants knew or should have known that such representations were false,' is insufficient."  Order (doc. no. 11), at 18 (citation to the record omitted).  In her amended complaint, after describing the purported misrepresentations on which Count IX is based,

L'Esperance states: "The Defendants made these loans[15] to induce the Plaintiff's continued payment of and entry into the loans, but all the while the Defendants knew or should have known that such representations were false."  Am. Compl. ¶ 104.  In reliance on Rule 9(b), L'Esperance argues that she has adequately alleged Beneficial NH's state(s) of mind.  She is mistaken.

    With regard to the relevant pleading standard, the Federal Rules provide:

> **Fraud or Mistake; Conditions of Mind.**  In alleging
> fraud or mistake, a party must state with
> particularity the circumstances constituting fraud or
> mistake.  Malice, intent, knowledge, and other
> conditions of a person's mind may be alleged
> generally.

Fed. R. Civ. P. 9(b).  In L'Esperance's view, her allegations of defendants' states of mind satisfy the second sentence of Rule 9(b).  They do not.

    In a case cited in the court's previous order, the Court of Appeals for this circuit explained:

> Rule 9(b) requires not only specifying the false
> statements and by whom they were made but also
> identifying the basis for inferring scienter.
> Although the rule itself is not pellucid, precedent in
> this circuit, as in a number of others, is clear:

---

[15] Context suggests that perhaps L'Esperance meant to say "Defendants made these statements" rather than "Defendants made these loans."

> The courts have uniformly held inadequate a
> complaint's general averment of the defendant's
> 'knowledge' of material falsity, unless the
> complaint <u>also</u> sets forth specific facts that
> make it reasonable to believe that defendant knew
> that a statement was materially false or
> misleading.
>
> <u>Greenstone v. Cambex Corp.</u>, 975 F.2d 22, 25 (1st Cir.
> 1992) (Breyer, J.) (citations omitted), <u>superseded by
> statute on other grounds</u>, <u>Private Securities
> Litigation Reform Act of 1995</u>, Pub. L. No. 104-67, 109
> Stat. 737; <u>see also</u> <u>Romani v. Shearson Lehman Hutton</u>,
> 929 F.2d 875, 878 (1st Cir. 1991), similarly
> superceded by statute on other grounds.
>
> North American provides no information in the
> complaint to suggest that the defendants feigned their
> original expressed intention to use the Alliance's
> spectrum.  The complaint says that Goldman Sachs never
> intended to follow its business plan but the assertion
> is not itself supported with particulars that suggest
> scienter and so just pushes the pleading deficiency
> back one stage; no particulars are pleaded which would
> suggest the elements of fraud in the inducement.

<u>N. Am. Catholic Educ. Prog. Found., Inc. v. Cardinale</u>, 567 F.3d

8, 13 (1st Cir. 2009).  Here, after acknowledging the Rule 9(b)

pleading standard in her memorandum of law, L'Esperance argues

that

> [i]t can be reasonably inferred from the Plaintiff's
> allegations of specific untruthful promises and
> inducements that the Defendants had the requisite
> scienter, which include, failure to use reasonable
> care in making these false statements (negligent
> misrepresentation), reckless disregard of the truth
> (fraud), or knowledge of their falsity (fraud).

Pl.'s Mem. of Law (doc. no. 27-1), at 8.  Based on her erroneous

belief that scienter may be inferred from a statement's falsity,

L'Esperance does not even try to identify "specific facts that
make it reasonable to believe that [Beneficial NH] knew that
[its] statement[s] [were] materially false or misleading."
Cardinale, 567 F.3d at 13.  Without such allegations,
L'Esperance has failed to state a claim for intentional
misrepresentation or fraud.  Moreover, as she was provided quite
specific guidance on how to frame such a claim in the court's
previous order, but has proffered an entirely fact-free
allegation of scienter, the court concludes that she is unable
to properly allege a claim for fraud.  Thus, to the extent Count
IX asserts a fraud claim, dismissal is with prejudice.

Beneficial NH also argues that L'Esperance's inability to
adequately allege facts establishing scienter dooms her claim
for negligent misrepresentation.  "Scienter" is "[a] mental
state consisting of an intent to deceive, manipulate, or
defraud."  Black's Law Dictionary 1463 (9th ed. 2009).  Plainly,
scienter is an element of intentional misrepresentation.  See
Tessier v. Rockefeller, 162 N.H. 324, 332 (2011) ("The tort of
intentional misrepresentation, or fraud, must be proved by
showing that the representation was made with knowledge of its
falsity or with conscious indifference to its truth and with the
intention of causing another person to rely on the
representation.") (quoting Patch v. Arsenault, 139 N.H. 313, 319

(1995)).  Scienter, however, does not appear to be an element of a claim for negligent misrepresentation, which requires a plaintiff to prove "a negligent misrepresentation of a material fact by the defendant and justifiable reliance by the plaintiff."  Wyle v. Lees, 162 N.H. 406, 413 (2011) (citing Snierson v. Scruton, 145 N.H. 73, 78 (2000)).

However, in the context of negligent misrepresentation, "[i]t is the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care to verify the truth of his statements before making them."  Wyle, 162 N.H. at 413.  So, while a plaintiff asserting a claim for negligent misrepresentation is not compelled by Rule 9(b) to specifically allege facts sufficient to support a reasonable inference of scienter, such a plaintiff is still required, by Rule 8(a)(2), to provide a short and plain statement showing that the defendant failed "to exercise reasonable care to verify the truth of his statements before making them," Wyle, 162 N.H. at 413.  Beneficial NH is entitled to dismissal of L'Esperance's negligent misrepresentation claim because she has alleged no facts which, if proven, would establish that those who made the statements at issue breached their duties to verify the truth of the statements they made.

However, even if L'Esperance had adequately alleged that
those who made statements to her breached their duties to verify
the truth of the statements they made, her negligent misrepre-
sentation claim would be subject to dismissal for a more
fundamental reason: L'Esperance's failure to allege facts
linking Beneficial NH to any of the purported misrepresenta-
tions.  In Count IX, the only mention of Beneficial NH appears
in the following passage:

> Though Beneficial NH, Inc. now appears to Plaintiff to
> have been a separately incorporated entity and
> identified on the mortgage and some loan
> documentation, on information and belief, Beneficial
> NH, Inc. was a "branch office," and agent and wholly
> owned subsidiary of Defendants HSBC Lending, HSBC
> Finance Corporation, HSBC Group, Household
> International Inc. and Beneficial Corp.  Thus, the
> Plaintiff alleges that Defendants HSBC Lending, HSBC
> Finance Corporation, HSBC Group, Household
> International Inc. and Beneficial Corp. are
> responsible for the representations and actions of Ms.
> Halteman and Ms. Maranhao, are responsible for the
> acceptance and origination of the Plaintiff's loans,
> and are additionally independently responsible for the
> violations and causes of action set forth herein as
> the servicers of the Plaintiff's loans, at least from
> March 2009 forward.

Am. Compl. ¶ 103(ii).  Several things stand out.  Most
importantly, while L'Esperance identifies five separate entities
that are, in her view, responsible for statements made by
Halteman and Maranhao, Beneficial NH is not one of them.
Allegations that Beneficial NH "was a 'branch office,' and agent
and wholly owned subsidiary" of five corporate entities who are

alleged to be responsible for the statements at issue is insufficient to make Beneficial NH responsible for those statements.  If A has two agents, B and C, and B commits a tort, A may be liable for B's tort under agency law, but the mere fact that B and C are both agents of A is no basis for holding C liable for B's tort.  Absent any factual allegations linking Beneficial NH to the alleged misrepresentations on which Count IX is based, Beneficial NH is entitled to dismissal of Count IX in its entirety.[16]

Finally, even if L'Esperance were to properly move for leave to amend her complaint, and adequately alleged facts in a second amended complaint under which Beneficial NH could be held liable for Halteman's statements, any such amendment would be futile because L'Esperance's misrepresentation claim would be barred by the economic-loss doctrine.

The economic loss doctrine is a "judicially-created remedies principle that operates generally to preclude

---

[16] Under other circumstances, the court's obligation to "draw[ ] all reasonable inferences in favor of plaintiff[ ]," Plumbers' Union, 632 F.3d at 771, might counsel in favor of treating L'Esperance's amended complaint as alleging that Halteman was an agent of Beneficial NH.  But, the court's previous order clearly placed L'Esperance on notice of her obligation to remedy the group-pleading problem in her original complaint and plead her causes of action with the requisite level of specificity.  Given that L'Esperance's amended complaint is a direct response to the court's previous order, the court must presume that L'Esperance's exclusion of Beneficial NH from her list of parties responsible for Halteman's statements was deliberate.

contracting parties from pursuing tort recovery for
purely economic or commercial losses associated with
the contract relationship." Plourde Sand & Gravel v.
JGI Eastern, 154 N.H. 791, 794 (2007) (quotation
omitted). The doctrine "is based on an understanding
that contract law and the law of warranty, in
particular, is better suited than tort law for dealing
with purely economic loss in the commercial arena."
Id. (quotation omitted); see Barton Drowning in a Sea
of Contract: Application of the Economic Loss Rule to
Fraud and Negligent Misrepresentation Claims, 41 Wm. &
Mary L. Rev. 1789, 1796-97 (2000) (explaining that
while contract law presumes that contracting parties
"are able to allocate risks and costs of the potential
nonperformance," tort law provides a remedy where "it
is impractical or impossible to negotiate either the
terms of a sale or each party's duty to the other"
(quotation and ellipsis omitted)).

As such, the rule precludes a harmed contracting
party from recovering in tort unless he is owed an
independent duty of care outside the terms of the
contract. Plourde Sand & Gravel, 154 N.H. at 794.

Wyle, 162 N.H. at 410 (parallel citation omitted). The Wyle

court further explained:

Many courts have distinguished those negligent
misrepresentation claims that center upon an alleged
inducement to enter into a contract from those that
focus upon performance of the contract. [Barton,
supra], at 1815; see Rich Products Corp. v. Kemutec,
Inc., 66 F. Supp. 2d 937, 977 (E.D. Wis. 1999)
(explaining that a plaintiff may plead tort claims
"stemming from misrepresentations which induce them to
enter into a contract, so long as the representations
. . . do not concern the quality or characteristics of
the subject matter of the contract or otherwise relate
to the offending party's expected performance"),
aff'd, 241 F.3d 915 (7th Cir. 2001).

Wyle, 162 N.H. at 411.

In Wyle, the court held that the plaintiff's negligent
misrepresentation claim was not barred by the economic-loss
doctrine where the evidence at trial established that the
defendants made negligent misrepresentations that the premises
they intended to sell the plaintiff were licensed for immediate
occupancy when they were not, and that they had obtained all
necessary permits when they had not, conditions that were not
warranted or otherwise addressed by the parties' agreement. See
id. at 412. Here, by contrast, the crux of L'Esperance's
negligent misrepresentation claim is that her interest rate was
not lowered, despite Beneficial NH's promise that it would be.
That is, the alleged misrepresentation on which L'Esperance's
claim is based relates directly to Beneficial NH's performance
of its agreement with her. Thus, even if L'Esperance were to
adequately allege facts making Beneficial NH liable for
Halteman's statements, her negligent misrepresentation claim
would be barred by the economic-loss doctrine.

### 6. Count VI: Obligation of Good Faith

In Count VI, L'Esperance asserts that Beneficial NH
breached the implied covenant of good faith and fair dealing by
extending her a predatory loan that was not beneficial to her.
See Am. Compl. ¶ 88-89. In the words of her complaint:

>Selling to Plaintiff and perpetuating loans that
>were not beneficial to her violated the Defendants

> Beneficial New Hampshire, Inc., Household
> International, Inc., HSBC Consumer Lending, Inc., HSBC
> Finance Corporation, HSBC Group a/k/a HSBC Bank and
> Beneficial Corporation's obligation to deal with the
> Plaintiff in good faith and with fairness.
>
> Such actions breached the Beneficial New
> Hampshire, Inc., Household International, Inc., HSBC
> Consumer Lending, Inc., HSBC Finance Corporation, HSBC
> Group a/k/a HSBC Bank and Beneficial Corporation's
> obligations of good faith and fair dealing to the
> Plaintiff.

Am. Compl. ¶¶ 90-91.

Beneficial NH argues that Count VI fails to state a claim

on which relief can be granted because rather than basing Count

VI on any of the three categories of conduct judicially

understood to be encompassed by the implied covenant of good

faith and fair dealing, L'Esperance bases her claim on the

allegedly onerous nature of the contractual terms themselves.

L'Esperance responds:

> Here, the Plaintiff has alleged that the originating
> Defendants failed to deal with her in good faith based
> on the conduct alleged, including but not limited to,
> making false representations and promises for
> adjustments to induce her reliance and entry into the
> mortgage note, in selling her a mortgage that was high
> cost and not beneficial to her (formation), and with
> regard to the servicing Defendants, in failing to deal
> fairly with her regarding her modification when she
> had complied with the trial period and was promised
> permanent modification, particularly whereas her
> financial hardship was induced by the Defendants.
> Therefore, the Plaintiff's claim should not be
> dismissed.

Pl.'s Mem. of Law (doc. no. 27-1), at 6.  The court is not persuaded by any of L'Esperance's three arguments.

As a preliminary matter, L'Esperance does not appear to allege that Beneficial NH was a so-called servicing defendant, so her third argument involves no conduct on Beneficial NH's part.  Before discussing L'Esperance's first and second arguments, the court describes the law on which Count VI is based.

In a recent opinion, the New Hampshire Supreme Court described the implied covenant of good faith and fair dealing:

> In every agreement, there is an implied covenant that the parties will act in good faith and fairly with one another.  Livingston v. 18 Mile Point Drive, 158 N.H. 619, 624 (2009).  In New Hampshire, there is not merely one rule of implied good-faith duty, but a series of doctrines, each of which serves a different function.  Id.  The various implied good-faith obligations fall into three general categories: (1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance.  Id.

Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 198 (2010).  L'Esperance's two remaining arguments in support of Count VI both invoke the first category of duties described in Birch Broadcasting.  In its seminal case on this area of the law, the New Hampshire Supreme Court explained that in its

> decisions setting standards of conduct in contract formation, the implied good faith obligations of a contracting party are tantamount to the traditional duties of care to refrain from misrepresentation and

> to correct subsequently discovered error, insofar as
> any representation is intended to induce, and is
> material to, another party's decision to enter into a
> contract in justifiable reliance upon it.

Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139 (1989)

(citations omitted).

In Bursey v. Clement, the New Hampshire Supreme Court held

that a seller of real estate breached the implied covenant of

good faith and fair dealing by misrepresenting to the buyer the

number of lots into which he would be permitted to subdivide the

property he was seeking to purchase. See 118 N.H. 412, 414-15

(1978). The rule of Bursey is that one may breach the implied

covenant of good faith and fair dealing, as it relates to

contract formation, by making misrepresentations concerning the

subject matter of a contract.

In Dawe v. American Universal Insurance Company, the New

Hampshire Supreme Court held that an insurance company, acting

through an adjuster, breached the implied covenant of good faith

and fair dealing by obtaining a release "signed by [its insured]

recit[ing] that it was in full and final settlement for all

injuries arising out of out of [her] accident," 120 N.H. 447,

449 (1980), while telling her that "the settlement would [not]

release the [insurer] of liability for further medical

expenses," id. The trial court "found that [the adjuster]'s

explanation of the release constituted misrepresentation which,

together with his failure to fully disclose to the [insured] her
other rights, resulted in an unconscionable settlement." Id.
The rule of Dawe is that one may breach the implied covenant of
good faith and fair dealing, as it relates to contract
formation, by making misrepresentations concerning the terms of
a contract.

The court further notes that it would appear that for pre-
formation misrepresentation to be a breach of the implied
covenant of good faith and fair dealing, the misrepresentation
must have been made with scienter.  The defendant in Bursey
failed to correct a statement that became false, before the
transaction was consummated, due to circumstances that were
known to him but not to the plaintiff.  See 118 N.H. at 414-15.
The insurance adjuster in Dawe made a false statement about the
content of a document he proffered to the plaintiff.  See 120
N.H. at 449.  Under the circumstances, he had constructive
knowledge of the falsity of the statement he made.  Given that
the implied covenant of good faith and fair dealing requires
contracting parties to deal fairly with one another, but does
not require perfection, the court concludes that for a pre-
formation misrepresentation to constitute a breach of the
covenant, it must be made with scienter.  That is, a pre-
formation negligent misrepresentation is certainly unfortunate,

but does not rise to the level of a breach of the implied covenant of good faith and fair dealing.

Based on Centronics, Bursey, and Dawe, L'Esperance's argument that Beneficial NH breached the implied covenant of good faith and fair dealing by "selling her a mortgage that was high cost and not beneficial to her (formation)," Pl.'s Mem. of Law (doc. no. 27-1), at 6, is entirely unavailing.  For her part, L'Esperance has identified no legal authority for the proposition that the implied covenant of good faith and fair dealing imposes a duty on one contracting party to insure that the terms of a contract somehow "benefit" the other party.  Thus, the court agrees with Beneficial NH that one contracting party does not breach the covenant by entering into an agreement that includes terms that are not beneficial to the other contracting party.  L'Esperance could have avoided the contractual terms she now finds oppressive by declining to execute an agreement that included them and provided unambiguous notice of their inclusion.  Her loan agreement plainly stated the amount of her monthly payments.  Presuming that she knew her own monthly income, the agreement gave her all the information she needed to determine whether she could afford the monthly payments.

Accordingly, to the extent Count VI states a claim at all,
it would be a claim that Beneficial NH breached the implied
covenant of good faith and fair dealing, as it pertains to
contract formation, by making false representations that induced
L'Esperance to enter into the loan agreement.  The most glaring
problem with this claim, and the one that entitles Beneficial NH
to dismissal, is L'Esperance's complete failure to adequately
allege scienter.  As noted above, in the discussion of
L'Esperance's misrepresentation claim, L'Esperance has not even
attempted to identify facts alleged in her complaint that would
establish scienter.  That failure is fatal to both L'Esperance's
claim for intentional misrepresentation and the claim asserted
in Count VI, that Beneficial NH breached the implied covenant of
good faith and fair dealing.  Beyond that, L'Esperance has done
a wholly inadequate job of alleging: (1) a misrepresentation by
Halteman;[17] (2) Halteman's contemporaneous knowledge that the

_____

[17] L'Esperance alleges that Halteman told her that her
interest rate would be lowered after six months and that the
falsity of the promise was demonstrated when she was informed,
six months after she entered into the loan agreement, "that the
Defendants [which defendants, L'Esperance does not say] no
longer originated consumer mortgages, and they only serviced
such loans."  Am. Compl. ¶ 30.  L'Esperance does not explain how
the fact that some unnamed defendants no longer originated
mortgages falsified Halteman's promise that her interest rate
would be adjusted downward.

promises she made to L'Esperance was not going to be kept;[18] and (3) Beneficial NH's responsibility for any statements Halteman may have made.[19]

### 7. Count X: RSA 358-A

Count X is a claim under New Hampshire's Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. ("RSA") ch. 358-A. Beneficial NH moves to dismiss Count X, arguing that L'Esperance has failed to allege conduct that is barred by the CPA.

The CPA claim L'Esperance attempts to assert in Count X is both conclusory, see, e.g., Am. Compl. ¶¶ 108(a)-(d), and inexplicably repetitive of her misrepresentation claim, compare Am. Compl. ¶¶ 108(i)-(ix) with Am. Compl. ¶¶ 103(i)-(ix)).  That said, after stripping out several allegations that are too

---

[18] Such allegations are necessary when a misrepresentation claim is based on a promise rather than a statement of present fact.  See Thompson v. H.W.G. Group, Inc., 139 N.H. 698, 700-01 (1995).  L'Esperance's allegation that "at the time [the] promises were made, Jennifer Halteman was aware, or should have been aware that such promises were false," Am. Compl. ¶ 30, is a "naked assertion[ ]," Plumbers' Union, 632 F.3d at 771, that is entitled to no weight as a factual allegation.

[19] In paragraph 26 of her amended complaint, L'Esperance identifies five separate entitles as being responsible for Halteman's representations and actions.  Beneficial NH is conspicuously absent from that list.

conclusory to state a claim,[20] the court construes Count X as alleging the following conduct which, in L'Esperance's view, runs afoul of the CPA:

(1)   "ma[king] false or misleading representations to borrowers, including but not limited to selling the Plaintiff overpriced loans that violated existing statutes, rules, regulations or laws, meant for the protection of the Plaintiff as a consumer, including but not limited to TILA, HOEPA, ECOA, FHA, RESPA, HAMP, and then poorly servicing them in violation of their legal obligations to her," Am. Compl. ¶ 108(e);

(2)   "[o]rigination of and perpetuation of these loans when the Plaintiff's debt to income ratio was greater than 28/36% (housing debt ratio and back debt ratio both considered).  Further, these loans, upon the terms they were issued, require the allocation of too many of the Plaintiff's assets to payment of the mortgage for her to have sufficient residual monthly income to fully support the financial needs of her household. . . ."  Am. Compl. ¶ 108;

(3)   selling "overpriced, low quality loan products and loan servicing services," Am. Compl. ¶ 108(iv);

---

[20] For example, L'Esperance alleges that Beneficial NH's conduct: (1) "was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business," Am. Compl. ¶ 108(a); (2) "violated the requirement of good faith and fair dealing," id. ¶ 108(b); and (3) "violated existing statutes, rules, regulations or laws, meant for the protection of the Plaintiff as a consumer, including but not limited to TILA, HOEPA, ECOA, FHA, RESPA, [and] HAMP," id. ¶ 108(c).  In addition to being subject to dismissal because they are conclusory, the second and third claims described above also fail as a result of the court's determination that L'Esperance has not stated a claim for breach of the implied covenant of good faith and fair dealing and has failed to state a claim under any of the federal statutes she cites.

(4) promising, through "Ms. Halteman in September 2008 and October 2008 that [L'Esperance] would not have a prepayment penalty and promis[ing] a 2 point lower interest rate," Am. Compl. ¶ 108(v);

(5) failing to inform her "that she had the ability to negotiate the terms of the loan," Am. Compl. ¶ 108(vi);

(6) promising that her "interest rate would adjust downwards after the first six months," Am. Compl. ¶ 108(vii);

(7) "representing that [L'Esperance] was not eligible for modification or relief under her loans (including by letter of denial of Plaintiff's application for assistance in Beneficial/HSBC's Hardship Program was made to, and denied by Beneficial, Member HSBC Group by letter dated August 28, 2009 signed in name by a Kecia McPherson, Foreclosure Avoidance Program with a return address of 961 Weigel Drive, Elmhurst, Illinois. In this letter, Kecia McPherson of Beneficial, Member HSBC Group further represented that 'We are willing to work with you during this difficult time,['] but the denial simultaneously misrepresented that the Plaintiff's existing and original loan terms would be perpetuated, and suggested wrongfully that they could be lawfully perpetuated). " Am. Compl. ¶ 108(viii); and

(8) "extending a loan modification but only on temporary terms, . . . failing to advise the Plaintiff of her ability to negotiate her loan, [and] offering a loan on predatory and usurious terms," Am. Compl. ¶ 108(ix).

In response to Beneficial NH's argument that, with respect to the origination of her loan, L'Esperance has alleged nothing more than a breach of contract claim that is not cognizable under the CPA, L'Esperance defends the viability of her CPA claim in the following way:

Claims of this nature have been permitted in this Court.[21]  The Plaintiff has specifically alleged misrepresentation in inducement, that the Defendants sold her loans that were high cost and not beneficial to her, failed to advise her of her right to negotiate, and many instances of conduct in the origination, as well as in the servicing of the loan (failure to offer her permanent modification despite the fact that the Defendants had caused the hardship under which she sought relief).  Such conduct sufficiently pleads violation of consumer protection, and conduct that constitutes unfair and deceptive practices.  These allegations go well above an ordinary breach of contract claim.  The Plaintiff was a consumer, not another business.  Conduct violating standards pertaining to those inured to the rough and tumble world of business as between businesses (i.e. rascality) is not the requisite standard,[22] yet is nevertheless sufficiently alleged here.  The Plaintiff has sufficiently pled conduct that is deceptive, unfair, and in violation of consumer protection, and her claims should not be dismissed.

Pl.'s Mem. of Law (doc. no. 27-1), at 8.  The court will begin with a brief description of the CPA and then address each of the eight CPA claims it has distilled from Count X.

Under New Hampshire's CPA, "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or

---

[21] L'Esperance cites no decisions from this court permitting such claims.

[22] L'Esperance cites no authority for this proposition and, as it happens, the New Hampshire Supreme Court has applied the rascality test in cases involving CPA plaintiffs who were individual consumers.  See, e.g., Beer v. Bennett, 160 N.H. 166, 171 (2010); Barrows v. Boles, 141 N.H. 382, 390-91 (1996); cf. State v. Sideris, 157 N.H. 258, 263-64 (2008) (applying rascality test in criminal prosecution under CPA where victim was individual consumer); State v. Moran, 151 N.H. 450, 452-53 (2004) (same).

deceptive act or practice in the conduct of any trade or

commerce within this state." RSA 358-A:2. The balance of RSA

358-A:2 consists of a non-exclusive list of fourteen unlawful

acts. None of the conduct alleged in the amended complaint

falls into any of the categories listed in the statute.

> For conduct not particularized by the CPA to qualify
> as unfair or deceptive, it must be of the same type as
> that proscribed in the enumerated categories. State
> v. Moran, 151 N.H. 450, 452 (2004). Although the
> general provision of the CPA is broadly worded, not
> all conduct in the course of trade or commerce falls
> within its scope. ACAS Acquisitions v. Hobert, 155
> N.H. 381, 402 (2007).

State v. Sideris, 157 N.H. 258, 262 (2008) (parallel citations

omitted). Moreover:

> In determining which commercial actions not
> specifically delineated are covered by the act, [the
> New Hampshire Supreme Court has] employed the
> "rascality" test. [Sideris, 157 N.H.] at 263. Under
> the rascality test, the objectionable conduct must
> attain a level of rascality that would raise an
> eyebrow of someone inured to the rough and tumble of
> the world of commerce. Hobert, 155 N.H. at 402.

George v. Al Hoyt & Sons, Inc., 162 N.H. 123, 129 (2011)

(parallel citations omitted). With the foregoing principles in

mind, the court turns to L'Esperance's eight putative CPA

claims.

In her first CPA claim, L'Esperance accuses Beneficial NH

of making "false or misleading representations to borrowers,

including but not limited to selling the Plaintiff overpriced

loans . . . and then poorly servicing them . . ."  Am. Compl. ¶
108(e).  While the CPA does proscribe various types of
misrepresentation, see, e.g., RSA 358-A:2, IV-VII, the claim
L'Esperance makes is nonsensical because the "misleading
representations" on which it is based are described as selling
and poorly servicing overpriced loans.  There is no CPA claim
here.

    In her second CPA claim, L'Esperance accuses Beneficial NH
of originating and perpetuating loans with monthly payments that
were too costly for her to afford.  The monthly payments were
stated plainly on her two loan agreements.  Thus, no deception
of any sort is alleged.  There is no CPA claim here.

    In her third CPA claim, L'Esperance accuses Beneficial NH
of selling her "overpriced, low quality loan products and loan
servicing services."  Am. Compl. ¶ 108(iv).  There are no
allegations that Beneficial NH engaged in any of the allegedly
low-quality loan servicing L'Esperance complains of, and because
the costs and qualities of her loan products were plainly stated
in her two loan agreements, there is no allegation of any
deception.  There is no CPA claim here.

    In her fourth CPA claim, L'Esperance alleges that Halteman
promised her that she would not have a prepayment penalty and
would be given an interest rate two points lower than the rate

she ultimately got.  Leaving aside the lack of any allegations
sufficient to establish Beneficial NH's liability for any
statements made by Halteman, discussed in detail above,
L'Esperance got a loan with no prepayment penalty, and to the
extent that her loan agreements plainly specified her interest
rates, she had the ability to decline the loans Beneficial NH
offered if she was dissatisfied with their interest rates.  In
other words, L'Esperance has alleged no deceptive conduct.
There is no CPA claim here.

In her fifth CPA claim, L'Esperance accuses Beneficial NH
of failing to inform her "that she had the ability to negotiate
the terms of [her] loan."  Am. Compl. ¶ 108(vi).  Because
Beneficial NH had no superior knowledge of L'Esperance's right
to negotiate the terms of her loan, there was nothing deceptive
about Beneficial NH's failure to inform her of that right.
There is no CPA claim here.

In her sixth CPA claim, L'Esperance accuses Beneficial NH
of promising that her "interest rate would adjust downwards
after the first six months."  Am. Compl. ¶ 108(vii).  For the
reasons given with respect to L'Esperance's claims for
misrepresentation and breach of the implied covenant of good
faith and fair dealing based on this same allegation, there is
no CPA claim here.

In her seventh CPA claim, L'Esperance attempts to assert a CPA violation based on representations by one Kecia McPherson that she was ineligible for modification or relief.  Absent any allegations linking McPherson to Beneficial NH, there is no CPA claim here.

In her final CPA claim, L'Esperance attempts to assert a CPA violation based on "extending a loan modification but only on temporary terms , . . . failing to advise [her] of her ability to negotiate her loan, [and] offering a loan on predatory and usurious terms."  Am. Compl. ¶ 108(ix).  The court has already explained why L'Esperance's second and third assertions do not state a claim under the CPA.  L'Esperance's first assertion fails to state a CPA claim against Beneficial NH because her complaint identifies only Household International, Inc.; HSBC Consumer Lending, Inc.; HSBC Finance Corporation; HSBC Group a/k/a/ HSBC Bank, NH a/k/a HSBC North American Holdings, Inc.; and Beneficial Corporation as having been involved in giving her a temporary loan modification rather than a permanent one.  Absent an allegation that Beneficial NH had anything to do with L'Esperance's temporary loan modification, there is no CPA claim here.

Because L'Esperance has failed to state a claim on which relief can be granted under the CPA, under any of the eight

theories she advances, Beneficial NH is entitled to dismissal of Count X.

### 8. Count XIII: Negligence

L'Esperance's final claim is that Beneficial NH is liable to her in negligence, because it breached the duty of care it owed her to originate her loan "in a reasonable manner and in conformity with the standards imposed on the industry by statute, regulation, and common law, so as to avoid causing foreseeable damage to the Plaintiff."  Am. Compl. ¶ 121. Beneficial NH moves to dismiss, arguing that

> under New Hampshire law, the relationship between a lender and borrower is contractual in nature, Ahrendt v. Granite Bank, 144 N.H. 308, 311 (1999), and that the existence of such a contractual relationship typically prohibits recovery in tort, see Wyle v. Lees, 162 N.H. 406, 409–10 (2011).

Moore v. Mortg. Elec. Reg'n Sys., Inc., ___ F. Supp. 2d ___, ___, 2012 WL 253834, at *18 (D.N.H. Jan. 27, 2012) (parallel citations omitted).  L'Esperance responds by citing Dugan v. Manchester Federal Savings & Loan Ass'n, 92 N.H. 44 (1942), and contending, without citation to authority, that she "has alleged that the Defendants' actions put her into financial peril, creating a separate and additional duty beyond contract and beyond the traditional duties associated with the normal role of

money lender"[23] and that "[w]hen servicing disadvantageous loans,
the Servicing Defendants owed further duty beyond contract to
offer permanent modification."  Pl.'s Mem. of Law (doc. no. 27-
1), at 9.

In Dugan, the New Hampshire Supreme Court acknowledged the
principal of law

> that the mortgagee in the exercise of the power of
> sale acts as a trustee of the mortgagor, and in the
> performance of his right to sell must exercise good
> faith and reasonable diligence to protect the rights
> of the mortgagor and use reasonable efforts to obtain
> a fair price for the property, in properly advertising
> and conducting the sale.

92 N.H. at 47.  That rule of law, obviously, has no application
to the facts of this case where the issue is not the manner in
which a lender conducted a foreclosure sale, but, rather, the
manner in which a lender originated a loan.  Moreover, in
addition to failing to allege that Beneficial NH was a servicing
defendant, in the first instance, L'Esperance has identified no
legal authority for the novel proposition that a loan servicer
has an enforceable tort duty to modify loans that a lender has
entered into improvidently.  Finally, L'Esperance has no answer
for Beneficial NH's persuasive and meritorious invocation of the
economic-loss doctrine as a bar to tort recovery under the

---

[23] As with the duties L'Esperance says are owed by lenders
to borrowers who are in financial peril, L'Esperance identifies
no authority that describes "the traditional duties associated
with the normal role of money lender," whatever they may be.

circumstances of this case. Accordingly, Beneficial NH is entitled to dismissal of Count XIII.

## Conclusion

For the reasons detailed above: (1) HSBC Group's motion to dismiss, document no. 24, is granted in part; and (2) the second motion to dismiss, in which HSBC Group joins, document no. 25, is granted in full. Consequently, no claims remain against HSBC Consumer Lending, Inc.; HSBC Finance Corporation; HSBC Group a/k/a HSBC Bank, NA a/k/a HSBC North American Holdings, Inc.; Household International, Inc.; Beneficial Corporation; and Beneficial New Hampshire, Inc. Moreover, for reasons also discussed above, this dismissal is with prejudice. L'Esperance has had a full and fair opportunity to assert claims against those involved in making her the loans she now wishes to walk away from, and there is nothing in her amended complaint to suggest that giving her yet a third bite at the apple will result in anything other than another set of deficient claims. Accordingly, this case is now limited to the claims against Manhattan Mortgage asserted in Counts IX, X, XII and XIII, and nothing more.

Finally, while document nos. 24 and 25 were pending, L'Esperance filed a motion for leave to supplement the memorandum of law in support of her objection to defendants'

motion to dismiss.  That motion is denied.  As best the court can tell, L'Esperance seeks to supplement her objection to dismissal by adding a request to amend her complaint.  LR 7.1(a)(1) states that "[o]bjections to pending motions and affirmative motions for relief shall not be combined in one filing."  Because L'Esperance is moving to supplement her objection to dismissal with a motion for affirmative relief, resulting in a combination expressly prohibited by LR 7.1(a)(1), her motion for leave to supplement her objection, document no. 30, is necessarily denied.

        SO ORDERED.

                                    _____
                                    Landya McCafferty
                                    United States Magistrate Judge
June 12, 2012

cc:   Jason D. Gregoire, Esq.
      Michael R. Stanley, Esq.
      Shenanne Ruth Tucker, Esq.
      John-Mark Turner, Esq.